## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **RODNEY CARBAJAL**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 16 C 8364 |
| | ) | |
| **CITY OF HIGHLAND PARK, ILLINOIS POLICE DEPARTMENT**, an Illinois Municipality, and **PAUL SHAFER**, individually, and in his capacity as Police Chief of the City of Highland Park, Illinois, | ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Rodney Carbajal ("Carbajal") has filed this action against the City of Highland Park, Illinois and its Chief of Police Paul Shafer, alleging that he has been the target of employment discrimination and retaliation. Both defendants have filed a motion to dismiss Counts III and IV of Carbajal's Complaint. For the reasons stated in this memorandum opinion and order, their motion is granted as to Carbajal's Count III <u>Monell</u> claim and denied as to his Count IV Illinois Whistleblower Act claim.

### Background

Carbajal has been an officer in the Highland Park Police Department since 1995, and he was promoted to sergeant in 2008, a rank at which he is the only Hispanic officer (Complaint ¶ 8). Carbajal claims to have protested repeatedly throughout his time in the Police Department about what he believes to be discriminatory treatment and retaliation (Complaint ¶ 11). According to Carbajal, Shafer treated him differently from non-Hispanic officers: for instance, he asserts in particular that Shafer disciplined him for minor infractions as to which he did not

discipline non-Hispanic officers (Complaint ¶ 11). Defendants admit that Carbajal raised the issue of discrimination on more than one occasion (Answer ¶ 11). Carbajal filed a charge with the Equal Employment Opportunity Commission ("EEOC") on January 31, 2014 and received a Notice of Right To Sue on January 28, 2015 (Complaint ¶ 12).

Even more seriously, Carbajal contends that he was passed over by Shafer for two different promotions because of his national origin. General Order 119 states that promotions are given to the highest scorer on tests and interviews that are tailored to meet the Police Department's hiring needs, and Carbajal claims that Shafer routinely failed to comply with that Order (Complaint ¶ 18). In November 2014 Carbajal informed City Manager Ghida Neukrich that he was interested in applying for the soon-to-be-vacant Deputy Chief position, but ultimately he was not invited to interview for the job (Complaint ¶¶ 13, 19), and on December 15, 2014 he learned that Shafer had promoted Commander Timothy Wilinski, whose record Carbajal believes was inferior to his own (Complaint ¶¶ 13, 16). Carbajal was given the explanation that only a person who was already in a commander position could be promoted to Deputy Chief, even though that requirement was not listed on the job description (Complaint ¶ 14). In that respect Carbajal asserts that he often performed the duties of a commander and received a commander's pay regardless of his title (Complaint ¶ 15).

After Wilinski was promoted to Deputy Chief, four of the duties normally assigned to the Deputy Chief were reassigned to Carbajal (Complaint ¶ 17). Carbajal then applied for the commander position that had been vacated by Wilinski's promotion (Complaint ¶ 20), but in May 2015 he learned that the position had been given to John Lowman (Complaint ¶¶ 21, 23). Once again Carbajal asserts that his record and accomplishments were superior to Lowman's, and he adds that Lowman enjoyed an unfair advantage because of his prior relationship with one

of the interview panelists (Complaint ¶¶ 21, 22). Carbajal then filed a second charge with the EEOC on June 23, 2015, and he received a Notice of Right To Sue on that charge on May 27, 2016 (Complaint ¶ 24).

**Legal Standards**

Under Rule 12(b)(6) a party may move for dismissal for the "failure to state a claim upon which relief can be granted." Familiar Rule 12(b)(6) principles require the district court to accept as true all of Carbajal's well-pleaded factual allegations and to view those allegations in a light most reasonably favorable to him as the nonmovant (<u>Lavalais v. Vill. of Melrose Park</u>, 734 F.3d 629, 632 (7th Cir. 2013)). But "legal conclusions or conclusory allegations that merely recite a claim's elements" are not entitled to any presumption of truth (<u>Munson v. Gaetz</u>, 673 F.3d 630, 632 (7th Cir. 2012)). Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction are evaluated under the same standard (<u>Scanlan v. Eisenberg</u>, 669 F.3d 838, 841 (7th Cir. 2012).

In the past decade the Supreme Court made an important change in the evaluation of Rule 12(b)(6) motions via what this Court regularly refers to as the "<u>Twombly</u>-<u>Iqbal</u> canon," a usage drawn from <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007), as more finely tuned in <u>Erickson v. Pardus</u>, 551 U.S. 89 (2007) (per curiam), and from <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009)). That canon has introduced the concept of "plausibility" into the analysis, and in that respect our Court of Appeals has "interpreted <u>Twombly</u> and <u>Iqbal</u> to require the plaintiff to provid[e] some specific facts to support the legal claims asserted in the complaint" (<u>McCauley v. City of Chicago</u>, 671 F.3d 611, 616 (7th Cir. 2011) (internal quotation marks omitted)). As <u>McCauley</u>, <u>id.</u> went on to reconfirm, claimants "must give enough details about the subject-matter of the case to present a story that holds together."

Because the focus of Rule 12(b)(6) motions is on the pleadings, such motions "can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice" (Geinosky v. City of Chicago, 675 F.3d 743, 745 n.1 (7th Cir. 2012)). But a nonmovant has more flexibility, for he, she or it "may elaborate on [its] factual allegations so long as the new elaborations are consistent with the pleadings" (id.).

### Count III: Monell Claim

Defendants first assert that Carbajal's claim invoking Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978) should be dismissed because his Complaint mistakenly cited 42 U.S.C. § 1981,[1] which does not create a private right of action, instead of section 1983, which does. Of course the fact that Carbajal failed to cite the correct statute in his complaint is of little consequence: All that Rule 8(a) requires of a complaint is (1) a short and plain statement of facts that could give rise to relief under federal law and (2) a demand for such relief (Hatmaker v. Mem'l Med. Ctr., 619 F.3d 741, 743 (7th Cir. 2010)).[2] Hence defendants' predicate does not support a Rule 12(b)(6) dismissal.

But there is a different and compelling reason to dismiss Carbajal's Monell claim: the proposition that a Monell claim really does not fit this type of case. Monell, 436 U.S. at 690

---

[1] All future references to provisions of "42 U.S.C. § --" will take the form "Section --," omitting the prefatory "42 U.S.C. §."

[2] Indeed, more than two decades ago our Court of Appeals established the principle that a complaint's failure to identify a theory of recovery, or even its assertion of an incorrect theory of recovery, did not render it vulnerable to Rule 12(b)(6) dismissal (Bartholet v. Reishauer A.G.(Zurich), 953 F.2d 1073, 1078 (7th Cir. 1992) and NAACP v. Am. Family Mut. Ins. Co., 978 F.2d 287, 292 (7th Cir. 1992)), Hatmaker, 619 F.3d at 743 cited more recent Seventh Circuit caselaw confirming that the principle remains alive and well.

established that municipalities and other bodies of local government are "persons" within the meaning of Section 1983 and therefore may be sued directly if they have committed a constitutional tort through "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." But Monell, id. at 691 explicitly rejected municipal liability bottomed only on a respondeat superior theory:

> Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort.

In positive terms, rather than by simply negating a respondeat superior underpinning, cases such as Valentino v. Vill. of S. Chicago Heights, 575 F.3d 664, 674 (7th Cir. 2009) restate the showing required of a plaintiff who wishes to hold a municipality directly liable under Monell:

> A municipality, such as the Village, may be liable for a section 1983 violation if, among other things: (1) it has a permanent and well-settled municipal custom or practice that, although not authorized by official law or policy, was the moving force behind the plaintiff's constitutional injury; or (2) an individual with final policy-making authority for the municipality (on the subject in question) caused the constitutional deprivation.

To that end Carbajal points to decisions by Chief of Police Shafer as the causal source of his discrimination and retaliation. And he expands on that contention by asserting that discrimination and retaliation based on national origin "was consistent with Highland Park's and Shafer's de facto customs and practices" (Complaint ¶ 49), and in doing so he seeks to hold the municipality directly liable for damages and declaratory relief.

But proving the City's Monell liability would require considerable (and, even more importantly in real-world terms, quite unnecessary) discovery and inquiry. For instance, Carbajal's contention that Shafer qualifies as a final policymaker on police personnel decisions would depend on state or local positive law, as well as "'custom or usage' having the force of

law" (Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737 (1989), quoting City of St. Louis v. Praprotnik, 485 U.S. 112, 124 n.1 (1988)).

Here, however, neither state law nor Highland Park's municipal code provides a clear answer. Illinois' Municipal Code vests in city managers the powers "To appoint and remove all directors of departments" and "To exercise control of all departments and divisions," including the police department (65 ILCS 5/5-3-7(2), (3)). While Highland Park's Code § 31.010[3] places the power to hire and discharge with the city manager, it provides that "the Manager may delegate to any other official or employee the authority to hire or discharge any employees so authorized."

So Highland Park's city manager might well have delegated final policymaking authority for police personnel decisions to Shafer (a prospect far more likely in a moderately-sized suburban city such as Highland Park[4] than, say, a major metropolis). But once again such a determination would require the parties and this Court to embark on a mission of inquiry regarding a host of such decisions and regarding Shafer's role in reaching them with or without final oversight and specific approbation by the city manager -- all to the end that the proof of repeated incidents might demonstrate a pattern or practice that would suggest a custom or usage with the force of law (see, e.g., Spell v. McDaniel, 824 F.2d 1380, 1387 (4th Cir. 1987)).

But as indicated parenthetically earlier, to expend the parties' resources in determining whether the facts give rise to direct liability on the part of Highland Park, including a Monell

---

[3] All further references to that Code will take the form "H.P. Code § --."

[4] Highland Park's population was 29,743 as of July 1, 2015 (United States Census Bureau, QuickFacts, https://www.census.gov/quickfacts/table/POP060210/1734722).

claim, would needlessly complicate this case as a practical matter. It must be remembered that if Carbajal prevails Highland Park would be responsible for damages by virtue of H.P. Code § 39.001:

> The City shall defend, indemnify, and hold harmless its current and former officials, commissioners, board members, officers, and employees, as well as representatives of the City serving on other bodies who have been appointed by the City Council, (the "Protected Personnel") from and against any civil, administrative investigations, claims, actions, or proceedings, and any judgments, fines, liabilities, and other costs thereof, including reasonable attorneys' fees and any amount paid in any settlement approved in advance by the City Council,. based upon any act, error, or omission that could reasonably be construed to be within the exercise of the lawful duties of such Protected Personnel.

Hence the presence or absence of a Monell claim will not change Carbajal's potential recovery or the source of payment: the damage award would reflect the harm that he has sustained, though it would not need to set out a substantively nonmeaningful apportionment between Shafer and the City. And for the reasons already stated, determining whether Highland Park is liable under Monell would require extensive and unnecessary discovery.

Nor does the Complaint's inclusion of a demand for declaratory relief save Carbajal's Monell claim. Carbajal alleges that he repeatedly complained of Shafer's discriminatory treatment of both himself and other Hispanic employees (Complaint ¶ 36; C. Mem. 6),[5] and this Court credits that allegation as Rule 12(b)(6) requires. But Carbajal does not purport to bring his lawsuit as a class action, and as an individual he lacks standing to bring a discrimination lawsuit on behalf of other officers.

---

[5] Each side's legal memorandum is cited "Mem.," preceded by "C." for Carbajal and "D." for defendants.

In sum, numerous paths lead to the same destination. Carbajal's putative Monell claim is dismissed.

### Count IV: Whistleblower Claim

Defendants also argue that Carbajal has failed to state a claim under the Illinois Whistleblower Act ("Whistleblower Act," 740 ILCS 174/15(b)):

> An employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation.

Neither of their contentions on that score is persuasive.

First they assert that Carbajal did not disclose this information to a "government or law enforcement agency"-- he brought his complaints to Chief of Police Shafer and the City (D. Mem. 5). But it is not at all clear just who, if not Chief Shafer and the City Manager, would have been the logical or appropriate representative of government or law enforcement agencies to be presented with Carbajal's discrimination complaint, or what more Carbajal could have done in terms of reporting to the appropriate party that would trigger the Whistleblower Act's retaliation protections.

Defendants next argue that Carbajal's Whistleblower claim is preempted by the Illinois Human Rights Acts ("Human Rights Act"). Indeed, the literal language of the Human Rights Act divests courts, both state and federal, of jurisdiction to hear state law claims of civil rights violations unless those claims are brought under that Act (775 ILCS 5/8-111(D)). As succinctly stated in Mein v. Masonite Corp., 109 Ill. 2d 1, 7, 485 N.E.2d 312, 315 (1985):

> It is clear that the legislature intended the Act, with its comprehensive scheme of remedies and administrative procedures, to be the exclusive source of redress for alleged human rights violations.

And the Human Rights Act elsewhere provides (775 ILCS 5/6-101) that it is a civil rights violation for a person to "Retaliate against a person because he or she has opposed that which he or she reasonably and in good faith believes to be unlawful discrimination . . . in employment."

On defendants' premise, then, to the extent that Carbajal complains of retaliation for his having complained about the alleged discrimination to which he was subjected, he would be required to bring that claim pursuant to the procedures detailed in the Human Rights Act. But it requires only a modest degree of rational thought and analysis to recognize that the Whistleblower Act is not entirely preempted by the Human Rights Act. Defense counsel would have done well to have thought first before advancing their argument in this case.

Remember that the Whistleblower Act was passed into law in 2004, just short of a quarter century <u>after</u> passage of the Human Rights Act. Consider the absurdity implicit in the contention that the Illinois General Assembly and the Governor would have enacted a statute expressly conferring new rights of action on employees such as Carbajal if the fangs of that statute had somehow been drawn retroactively by another enactment passed a generation earlier. If that had been the case, there would have been no point in enacting this remedies section of the Whistleblower Act, 740 ILCS 174/30:

> If an employer takes any action against an employee in violation of Section 15[6] or 20, the employee may bring a civil action against the employer for all relief necessary to make the employee whole, including but not limited to the following, as appropriate:
>   (1) reinstatement with the same seniority status that the employee would have had, but for the violation;
>   (2) back pay, with interest; and
>   (3) compensation for any damages sustained as a result of the violation,

---

[6] [Footnote by this Court] That citation refers to 740 ILCS 174/15, the provision invoked by Carbajal's Count IV.

including litigation costs, expert witness fees, and reasonable attorney's fees.

In that respect Carbajal expressly alleges in Complaint ¶ 57 that he informed Highland Park and Shafer "on multiple occasions that the city was engaging in illegal practices when it discriminated against him based on his national origin, Hispanic "-- an allegation squarely within the Whistleblower Act's 740 ILCS 174/15(b) prohibition against employer retaliation for having disclosed information that "discloses a violation of a . . . federal law." That alone suffices to deep-six defendants' attempt to call the Human Rights Act to their aid.

Though the further allegations in Complaint ¶ 57 do not affect that result, Carbajal goes on to refer there to:

> other illegal actions within the police department, including, but not limited to, violations of the criminal code, theft of time, threats of violence by superiors and discriminatory practice toward other Hispanic employees.

Carbajal has provided no more specific information than that about those other alleged violations, and the advent of the Twombly-Iqbal "plausibility" canon requires a plaintiff to "provid[e] some specific facts to support the legal claims asserted in the complaint (McCauley, 671 F.3d at 616) (internal quotation marks omitted)). That being so, this Court expects Carbajal to come forward during the course of discovery with more specific facts to support the plausibility of those allegations, failing which he would risk dismissal of that particular part of his claim.

Finally, defendants have moved to dismiss any whistleblower claim lodged against Shafer in his personal capacity. It is unclear from the Complaint whether Carbajal seeks to hold Shafer liable in his individual capacity under the Whistleblower Act, but if that were so that aspect of the Count IV claim would be dismissed because Shafer is not an "employer" as defined in 740 ILCS 174/5.

**Conclusion**

For the reasons stated in this opinion, defendants' motion to dismiss Carbajal's Count III Monell claim is granted, while their motion to dismiss the Count IV Illinois Whistleblower Act claim is denied. Defendants are ordered to answer Carbajal's Complaint (other than its dismissed Count III) on or before March 16, 2017, and this action is set for a status hearing at 9 a.m. March 28 to discuss the future course of proceeding with this litigation.

                                                    Milton I. Shadur
                                                    Senior United States District Judge

Date: March 2, 2017